## MENTER AND ROSENBLOOM CO. V. GEORGE W. GRAY.

1. The general knowledge of business or customers, such as would naturally be acquired by an employe (not involving special information in the nature of trade secrets) in the course of employment, may be used by him in his own behalf after leaving the business.
2. A stipulation in a contract of employment binding the employee not to engage or be, in any way, employed in the same line of business for a period of years under a forfeiture of a sum of money characterized as "liquidated damages," will be held void as in restraint of trade, where the circumstances show it to be unreasonable and unjust, as where it does not appeai that any damage could ensue from a breach.

HOSEA, J.

Heard on demurrer to amended petition.

Plaintiff sues as assignee of the firm of Menter, Rosenbloom & Company, to recover the one thousand dollars ($1,000) specified as a sum to be forfeited in and by a written contract of employment of defendant by plaintiff's assignors, in case he engaged in a similar employment within four years.

The contract in question, dated July 25, 1899, so far as material to the present inquiry, is in substance as follows:

Gray agrees to work for said firm by the week, working days beginning at 7:30 A. M., and ending at 8:30 P. M., excepting Saturdays, on which days service is to end at 11:00 P. M., at a weekly wage of fifteen dollars ($15), as manager of the store known as "People's Outfitting Co.," subject to following terms, conditions and restrictions. Then follows a series of eleven restrictive conditions relating to the method of performing his duties and limiting the power of independent action and making him personally responsible for any deficiency in stock. The twelfth clause is as follows, in full:

"(12) In consideration of such employment by the week, and the knowledge thereby obtained of the business of second parties, their customers and trade, the said George

W. Gray hereby agrees and covenants, with said Menter, Rosenbloom & Company, that he will not, for the period of four years, enter into the same line of business, namely, the selling of ladies' and gentlemen's wearing apparel by the credit system, or conduct or manage such business in the city of Cincinnati, either for himself or any person or corporation, and that he will not, in that time in said city, hire himself to another or work or be employed in such line of business. In case of violation on the part of the first part, to the foregoing provision of Clause 13 of this contract, said first party shall forfeit to second party the sum of one thousand dollars ($1,000), which sum is hereby agreed upon as liquidated damages therefor, and shall be considered as such and not a penalty.

"It is understood that first party shall have no power to act for the firm except as herein provided."

(The reference to Clause 13 is evidently a clerical error and means Clause 12. The terms of the stipulation leave it doubtful whether the four years' period runs from the date of the contract or its breach; but as plaintiff's counsel assume the first to be its proper construction, such will be assumed here.)

The petition, as originally filed, stated as a cause of action a breach of the contract in that defendant had left plaintiff and engaged with another in a similar business of selling wearing apparel "on the credit or contract plan," in Cincinnati, before the expiration of the stipulated period of four years, from July 29, 1899, whereby plaintiffs had been damaged to the extent of one thousand dollars ($1,000), for which sum they asked judgment, together with equitable relief.

In consequence of an order requiring the striking out of evidential matters, an amended petition was filed—the subject of the present demurrer—which amended petition omits the allegation of damages and prays judgment directly upon the contract for the stipulated sum.

A contract for a penalty has been defined as an agreement to pay a stipulated sum in case of default to coerce per-

formance or to secure payment of the actual damages.   *U. S.* v. *Cutajar,* 67 Fed., 530.

By the English statute the injured party in an action for penalty under a contract is limited to the collection of actual damages.   This principle has been largely adopted in this country and generally exercised by courts of common law, and the doctrines of equity applied in actions at law in determining, upon construction of the contract, whether the stipulated sum is penalty or liquidated damages.   *2 Page on Contracts,* par. 1170; *Hennessy* v. *Metzger,* 152 Ills., 514.

The courts have generally shown a marked desire to lean towards that construction which excludes the idea of liquidated damages and permits the party to recover only damages actually sustained.   *Badloff* v. *Haase,* 196 Ills., 368; *Heatwolfe* v. *Gorrell,* 55 Kansas, 695.

The reason for this is that actual damages in the nature of compensation for the injury is the fundamental principle of the law governing redress of injuries.   *Wattis* v. *Carpenter,* 13 Allen (Mass.), 19; *Farrar* v. *Beeman,* 63 Texas, 176.

Unless, therefore, there is some special element involved in it upon which damages may be predicated, such contracts are almost always construed as for a penalty.   *Knox, etc., Co.* v. *Grafton Co.,* 16 C. C., 21.

In placing a construction upon such a contract the terms used by the parties are not conclusive.   The meaning and legal effect are to be made out from the actual facts.   *Grasselli* v. *Lowden,* 11 O. S., 349, 361; *1 Sedgwick on Damages,* par. 406.

The general rule, as a guide for determination, given by Sedgwick, is as follows:

"Whenever the damages were evidently the subject of calculation and adjustment between the parties, and a certain sum was agreed upon and intended as a compensation, and is in fact reasonable, it will be allowed by the court as liquidated damages."   *1 Sedgwick on Damages,* par. 406. See, also, *Keck* v. *Beiber,* 146 Penn., 645; *Wilkinson* v. *Colley,* 164 Penn. State, 35.

Coming now to a consideration of the contract stipulation in the light of these authorities, we are to regard the circumstances as they existed when the contract was made and not as they existed when the alleged breach occurred. (*Gibson* v. *Oliver,* 158 Penn. State, 277.) And this follows from the fact that the object of construction of a contract is to determine the intent of parties in making it.

The contract here is one of employment in respect of duties, chiefly those of a clerk and salesman, and had to do with the ordinary incidents of trade in selling wearing apparel at retail. There does not appear to be anything about the business of a special nature involving "trade secrets"—nothing but what is and must be common in every such business—or any business of a kindred character, dealing in commodities of every-day use. The fact that sales, or some of them, were made on credit, payable in installments, gives it no special character. All sales made on credit, in every business, involve inquiry into the financial responsibility of the purchaser, and such information is usually acquired through channels open to every one.

The general knowledge of business methods and of customers, to be gained by an employe, such as any clerk similarly employed would naturally acquire in the business, he would have a right to use for his own advantage in leaving it. *Seifried* v. *Maycox,* Index Apl. 20, 1904; citing *Robb* v. *Green,* 2 Q. B. Div. (1901), p. 10.

But, manifestly, no damage could flow from the fact, *per se,* of defendant entering into the employment of another in the business of selling clothing by the "credit system" in Cincinnati. The stipulation is against "entering into the same line of business," in any capacity, even to "hiring himself to another to work or be employed in such line of business." This restriction would deny him employment, even as porter in a clothing store; yet it is obvious that such employment could not possibly work any disadvantage to plaintiff. The illustration serves to show that the stipulation in terms is one in restraint of trade, and is, moreover, without consideration and unenforceable; for if there had been no injury to be guarded against, there is nothing in respect of

which the plaintiff is entitled to protection or that can be the subject of damages to be liquidated.

Injury could only flow, not from the mere entering into other similar employment, but from making an unfair use therein of confidential information of a special nature gained while in the employment of plaintiff.

It is clear, therefore, that the stipulation goes beyond what is necessary for the protection of plaintiff, and is therefore harsh and oppressive upon the defendant, and is in the nature of coercion and not a pre-adjustment of compensation for an injury; for *non constat,* but defendant might even conduct and manage a business of his own with a different method of business and line of custom without making any unfair use of his knowledge or causing any injury to plaintiff whatever.

As said by Judge Minshall, in *Luffkin Rule Co.* v. *Fringelli,* 57 O. St., 596:

"The presumption of illegality (to be overcome by the party enforcing the contract) arises from the fact that any restraint of the kind tends to oppression by depriving the individual of the right to engage in a pursuit or trade with which he is generally most familiar, and consequently the community, of the services of a skillful laborer. * * * These considerations and others of a like character constitute, in great measure, that sound public policy which looks with distrust upon all agreements in restraint of trade. * * * Therefore, contracts whereby men are purchased out of their business and restrained from carrying it on anywhere else, should receive no aid from the courts."

If the contract is to be taken literally, as its terms import, it must be held void for want of consideration and as against public policy. But it may be claimed to mean and be, in effect, a stipulation against using the special knowledge gained in plaintiff's employ in the business of another or in any way unfair competition. This derives some support from the language of the stipulation—"in consideration of the knowledge thereby gained of the business of the second parties, their customers, and trade." Even on this basis, the "forfeit," as a stipulated amount, would be un-

reasonable, for the reason, among others, that it makes no distinction between an injury that might result from unfair and injurious conduct extended through a period a little short of four years, or continuing for but one day. (See in this connection, and also apropos of the word "forfeit," *Heatwole* v. *Corvell*, 35 Kansas, 695.) In this aspect of the case also, the amount stipulated must be regarded as a penalty and not as liquidated damages. It follows that the present petition, being for the recovery of the forfeit *per se,* is demurrable.

If amended to claim only actual damages suffered—as in the original petition—setting forth the contract upon the meaning indicated, it may be that plaintiff can show his right to the opportunity of proof before a jury.

Demurrer sustained, with ten days leave to amend.

*Sanford Brown,* for plaintiff.
*Burch & Johnson,* for defendant.